**E & L CHIPPING CO., INC., Formerly E & L Lumber Co., Inc., and Lester Lowery and Elvin "Buddy" Lowry, Appellants,**

**v.**

**The HANOVER INSURANCE COMPANY, Hanover Lloyd's Insurance Company, The St. Paul Insurance Company, and The St. Paul Insurance Companies, Inc., Appellees.**

No. 09–96–232 CV.

Court of Appeals of Texas, Beaumont.

Submitted Oct. 30, 1997.

Decided Feb. 5, 1998.

---

George E. Chandler, Reich Chandler, Darrin Walker, Law Offices of George Chandler, Lufkin, L. Brent Farney, San Antonio, James W. Hackney, Austin, Robert G. Osborn, Law Offices of Robert G. Osborn, Lufkin, for appellants.

David P. Boyce, Austin, Ruth G. Malinas, J. Michael Myers, Ball & Weed, San Antonio, John L. Riedl, Luce, Forward, Hamilton & Scripps, San Diego, CA, for appellees.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This appeal from the granting of summary judgments in favor of St. Paul Insurance Company and Hanover Insurance Companies raises several important issues concerning insurance law and the scope of environmental insurance coverage under Texas law.

Appellants (collectively referred to as "E & L") are a lumber company (E & L Chipping Co., Inc.) and its owners (the "Lowerys"). Appellees are three insurance companies: St. Paul Insurance Company ("St. Paul") and The Hanover Insurance Company and Hanover Lloyd's Insurance Company (collectively referred to as "Hanover").

E & L sued the insurance companies on breach of contract grounds for their refusal to defend E & L in four underlying lawsuits.[1] The underlying lawsuits arose from allegations that, in spraying water on a fire on their property, appellants caused a run-off of contaminated water into a nearby stream,

---

1. The four underlying suits are hereafter referred to as the *"Miller," "Collie," "Lane,"* and *"Bai-* *ley"* lawsuits and are collectively referred to as the "underlying lawsuits."

thereby also contaminating lakes and a spring of landowners located downstream. In addition to the breach of contract allegations, E & L also pleaded extra-contractual causes of action—fraud, misrepresentation, negligence, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act and Art. 21.21 of the Texas Insurance Code. The extra-contractual causes of action, all of which arose out of the refusal by the insurance companies to defend E & L in the underlying suits, are dependent upon the existence of a duty to defend for their viability.

St. Paul and Hanover, both insurers of E & L, denied coverage and refused to tender a defense. E & L claims it was forced to incur over $500,000 in legal expenses in the underlying lawsuits, which E & L successfully defended.

Both St. Paul and Hanover filed motions for summary judgment which were granted by the trial judge without specifying the grounds for his ruling. St. Paul's motion for summary judgment[2] was based on the following grounds: (1) the underlying lawsuits were not "accidents" during St. Paul's policy period; (2) the underlying claims were "known losses" or "losses in progress" prior to the inception of St. Paul's policy; and (3) E & L failed to disclose the known claims to St. Paul when E & L applied for the St. Paul policy. Hanover's motion for summary judgment claimed (1) E & L failed to tender to Hanover the *Collie, Lane,* and *Bailey* lawsuits for a defense and, as a result, Hanover had no duty to defend; and (2) the policy's "pollution exclusion" precluded coverage for claims alleged in the *Miller* lawsuit.

"When an insurer is faced with the dilemma of whether to defend or refuse to defend a proffered claim, it has four options: (1) completely decline to assume the insured's defense; (2) seek a declaratory judgment as to its obligations and rights; (3) defend under a reservation of rights or a non-waiver agreement; and (4) assume the insured's unqualified defense." *Katerndahl v. State Farm Fire and Cas. Co.,* 961 S.W.2d 518, 521 (Tex.App.—San Antonio 1997, n.w.h.); *Farmers Texas County Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 522 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). As noted above, both St. Paul and Hanover chose the first option.

An insurer's duty to defend and duty to indemnify are distinct and separate duties. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821–22 (Tex.1997). Thus, an insurer may have a duty to defend, but no duty to indemnify. *See Farmers Texas County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997). The duty to defend is, therefore, broader than the duty to indemnify. In the instant case, the issue before us is the duty to defend; since E & L successfully defended the underlying suits, there is no duty on the part of the insurers to indemnify.

A duty to defend is determined solely by the allegations in the underlying pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). Whether an insurance carrier owes a duty to defend under an insurance policy is a question of law which the appellate court reviews de novo. *State Farm Gen. Ins. Co. v. White,* 955 S.W.2d 474, 475 (Tex.App.—Austin 1997 n.w.h.); *State Farm Lloyds v. Kessler,* 932 S.W.2d 732, 735 (Tex.App.—Fort Worth 1996, writ denied). If the underlying petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *Merchants Fast Motor Lines,* 939 S.W.2d at 141. This is sometimes referred to as the "eight corners" rule. *Id.* When applying the eight corners rule, we give the allegations in the petition a liberal interpretation. *Id.* "[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965). In reviewing the underlying pleadings, the court must focus on the

---

2. St. Paul filed its motion for summary judgment, entitled "Cross–Motion for Summary Judgment," after E & L filed its motion for partial summary judgment against St. Paul.

factual allegations that show the origin of the damages rather than on the legal theories alleged. *Merchants Fast Motor Lines,* 939 S.W.2d at 141. We do not consider the veracity of the allegations in the underlying pleadings, read facts into the pleadings, or look outside the pleadings to determine if facts within coverage could have been pled. *Katerndahl,* 961 S.W.2d at 518 (citing *Merchants Fast Motor Lines,* 939 S.W.2d at 142).

## ST. PAUL'S DUTY TO DEFEND

The St. Paul policy on which E & L was insured is Commercial General Liability Policy No. 542TJ0354 (hereafter "the policy"), issued pursuant to application for such insurance dated January 9, 1989. As noted above, the scope of our review in determining the duty to defend is the language of the insurance policy itself, as well as the facts alleged in the underlying pleadings.

■ We look first at the facts alleged in the *Miller, Collie, Lane,* and *Bailey* lawsuits. Each petition alleges that a fire occurred in a wood chip pile on E & L's property around October 24, 1988, and that E & L attempted to extinguish the fire by spraying large quantities of water on it. The landowners, in the underlying suits, further contend that contaminated water from the wood chip pile ultimately ran onto their properties downstream and polluted lakes (*Miller, Collie,* and *Bailey* suits) and a spring (*Lane* suit). Miller and Lane contend the run-off also contaminated the underground water system. The contamination, as alleged by the four petitioners, was ongoing at the time each landowner filed suit and had continued unabated from the October 1988 date. The St. Paul policy period was February 1, 1989, to February 1, 1990. The individual suits were filed on the following dates: *Miller*—November 22, 1989; *Lane*—February 9, 1990; *Collie*—March 27, 1990; *Bailey*—December 28, 1990.

Having reviewed the facts alleged in the underlying suits, we look now at the language of the insurance contract. St. Paul's policy covers "property damage" occurring during the policy period. The policy does not require that an occurrence take place during the policy period. What the policy does provide is that the property damage must be caused by an occurrence, which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." As defined by the policy, "property damage" means: "a. [p]hysical injury to tangible property, including all resulting loss of use of that property; or b. [l]oss of use of tangible property that is not physically injured." The policy specifically states that St. Paul has a duty to defend "any suit seeking those damages." In other words, if a suit against the insured factually alleges property damage occurring during the policy period and resulting from an accident, St. Paul must defend its insured in that suit, unless a policy exclusion applies.

On the face of the pleadings, it is apparent the fire itself occurred prior to the inception of the policy and is clearly outside the policy period. We cannot determine from the underlying pleadings when the spraying of the water on the wood chip pile commenced or when it ended. The pleadings also do not state when the fire was extinguished or when the run-off or contamination ended. However, the petitions do clearly state that the property damage from the resulting run-off had been continuous since the date of the fire and, indeed, was continuing at the very time the underlying suits were filed. According to the policy, property damage must occur during the policy period; on the face of the pleadings, at least some of the property damage did so. In looking at the "eight corners" of the insurance policy and the underlying pleadings, it is apparent the facts pleaded are within the scope of the policy period.

■ In its supporting argument on the first ground raised in its motion for summary judgment, St. Paul alleges the claim falls within the policy exclusion regarding "expected or intended" property damage; that there was no accident falling within the scope of the policy; and that the exclusion serves to eliminate any duty to defend. Based on the facts alleged in the four suits in question, we do not perceive the alleged damage, which resulted from E & L's attempt to extinguish a fire caused by "sponta-

neous combustion," can in any way be viewed as "expected or intended" by the insured. The mere fact that E & L intended to engage in the conduct (i.e., spray water on the wood chip pile) that gave rise to the alleged injury (contamination of landowners' water downstream) does not mean there was no "accident" or "occurrence." As the Texas Supreme Court explained in *Cowan*, this interpretation would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance. *Cowan*, 945 S.W.2d at 828. The facts, as pleaded in the underlying suits, evidence an "accident" or "occurrence" and do not fall within the "expected and intended" exclusion of the policy.

■ St. Paul further contends that the underlying claims were "known losses" or "losses in progress"[3] prior to the inception of St. Paul's policy and are not covered by the policy. Both doctrines involve a knowledge of a loss which has already occurred or a loss in progress before the inception of the policy. In seeking to determine the applicability of those doctrines to the instant case, we turn once again to the eight corners rule. In so doing, we restrict our review to the insurance policy and the underlying pleadings, and again point out that the facts, as pleaded, evidence property damage occurring during the policy period as required by the policy.

■ The third ground upon which St. Paul bases its motion for summary judgment is E & L's alleged misrepresentation in the insurance application wherein E & L failed to list any claims regarding the fire water run-off. As a condition precedent to the insurer's liability under the policy, the insured's representations and statements in the declaration page must have been complete and accurate. In determining the duty to defend, as opposed to the duty to indemnify, we do not go outside the eight corners of the underlying pleadings and the insurance policy. Even if we could do so, we would reach the same conclusion—namely that there is no evidence of E & L's intent to deceive St. Paul with any of its representations. *See Union Bankers*

*Ins. Co. v. Shelton*, 889 S.W.2d 278 (Tex. 1994).

Construing the allegations in the underlying petitions liberally, as we are required to do under the standard of review in "duty to defend" cases, we find St. Paul did not establish as a matter of law that the facts alleged in the underlying suits were not within the scope of the coverage of the policy. The trial court erred in granting summary judgment for St. Paul. Appellants' point of error one is sustained.

## HANOVER'S DUTY TO DEFEND

The Hanover policy contains the following "absolute pollution exclusion":

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

### *MILLER SUIT*

■ The *Miller* petition stated the lawsuit became necessary because E & L "released contaminated water from its premises into the Magnus Branch in Tyler County Texas which has flowed downstream into Lake Electra." Ms. Miller alleged that "fire water runoff containing various hazardous and toxic substances was allowed to run unimpeded into Magnus Branch and thereafter came to rest on plaintiff's [Miller's] property, Electra Lake, among other places" as the result of E & L's attempt to extinguish a fire in the firewood chip pile located on E & L's premises. The *Miller* petition also alleged that a tank constructed to trap fire water was improperly built, resulting in "contaminated waters seeping into the underground water system thereby further contaminating plaintiff's water system." Included in the petition's assertions of negligence are allegations

---

**3.** The known loss and loss in progress doctrines are discussed in *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 501 (Tex.App.—Houston [14th Dist.] 1995, no writ) and *Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co.*, 997 F.2d 172, 178 (6th Cir.1993).

that E & L (1) had discharged contaminated firewater into her lake; (2) had discharged stored contaminated water from a decking pond on E & L's property into the water system, thereby damaging plaintiff's lake; and (3) was responsible for contamination by seepage of ground water from its operations.

Elsewhere in the pleading, Ms. Miller alleged that E & L Lumber Company had violated provisions of the Texas Water Code pertaining to the discharge of waste. Among the damages Ms. Miller sought to recover were loss of use and enjoyment of the property as a result of "offensive odor and possible toxic contamination," reduced market value of the property, and the cost of "drainage, dredging and clean up of said lake." Ms. Miller also alleged E & L "allowed fire water and other contaminated waters to be discharged into the Manges [sic] Branch as well as seep into the ground water which feeds Manges [sic] Branch and other lakes and streams thereby contaminating same."

Webster's dictionary defines "contaminate" as "to soil, stain, corrupt, or infect by contact or association...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 491 (1986). The dictionary then defines "pollute" as to "impair the purity of ... to make physically impure or unclean." *Id.* at 1756. Each word is given as a synonym for the other.

In *National Union Fire Ins. Co. v. CBI Industries, Inc.*, 907 S.W.2d 517 (Tex.1995), the Texas Supreme Court followed the great weight of authority in other jurisdictions that have found the absolute pollution exclusion to be unambiguous:

Courts usually strive for uniformity in construing insurance provisions, especially where, as here, the contract provisions at issue are identical across the jurisdictions. Most courts which have examined the same or substantially similar absolute pollution exclusions have concluded that they are clear and unambiguous. (footnote omitted) "This pollution exclusion is just what it purports to be—absolute ..." *Alcolac*, [*Inc. v. California Union Ins. Co.*], 716 F.Supp. 1546, 1549 (D.Md.1989). We agree. The language in this pollution ex-

clusion is clear and susceptible of only one possible interpretation in this case. *Id.* at 522.

*Tri County Serv. Co. v. Nationwide Mut. Ins. Co.*, 873 S.W.2d 719 (Tex.App.—San Antonio 1993, writ denied) held that an absolute pollution exclusion provision unambiguously barred coverage for damages caused when oil sprayed on a parking lot by a subcontractor was subsequently washed off by rain and polluted a nearby creek. *Id.* at 722. The *Tri County* court observed, "On the basis of the plain language of the exclusion in question, virtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes *all* coverage of *any* liability arising out of the release of pollutants." *Id.* at 721.

E & L contends that groundwater—the alleged cause of the property damage in the third complaint in the *Miller* petition—is clearly not pollution, and, therefore, that claim is clearly not excluded from coverage under the "pollution exclusion." In its argument, E & L contends that, because ground water is not a toxic or inherently hazardous substance, the policy is ambiguous as to whether seepage of ground water causing property damage comes within the pollution exclusion. Ms. Miller's complaint, however, clearly involves damages from contaminated ground water, since she alleges that polluted fire water and other contaminated waters from E & L's property seeped into the ground water and contaminated the lake on her property.

■ E & L further contends that it falls within the "hostile fire" exception to the pollution exclusion clause. Whatever caused the contamination of the liquid emanating from E & L's property, the alleged cause of the property damage to Ms. Miller's lakeside property, as alleged in the petition, was liquid pollution, not damage caused by smoke, fumes, or heat from a hostile fire; therefore, it is clear that the exception to the pollution exclusion in the policy, relating to property damage caused by "heat, smoke or fumes from a hostile fire," is inapplicable. Ms. Miller's petition does not assert any property damage from heat, smoke, or fumes, but instead claims damage from contaminated

water; this falls within the unambiguous language of the absolute pollution exclusion.

After considering all of the allegations of the *Miller* suit, we find the absolute pollution exclusion in both Hanford policies applies and precludes coverage or a duty to defend the *Miller* suit, which was timely tendered to Hanover for a defense.

## COLLIE, LANE, AND BAILEY SUITS

█ It is uncontroverted that appellants never notified Hanover they had been served in the *Collie, Lane,* or *Bailey* lawsuits and that they never tendered such lawsuits to Hanover for a defense at any time during the pendency of such lawsuits.

The underlying Hanover policy at issue in this case requires, as a condition precedent, that the insured comply with certain policy conditions. Among those conditions are the insured's duties "in the event of occurrence, claim or suit." Those duties include the following:

If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit".

You and any other involved insured must:

1. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit[.]"

In short, a condition precedent to the duty to defend lawsuits served upon the insured is that the insured must promptly provide written notice of the suit and must immediately forward copies of the suit with citation. In this case, it is uncontroverted that appellants failed to comply with those policy conditions with respect to the *Collie, Lane* and *Bailey* suits.

█ Acknowledging they did not notify Hanover of the filing of the aforementioned suits, appellants allege, however, that Hanover waived that policy requirement since it had already denied coverage of a *claim* arising out of the occurrence in question. Furthermore, appellants allege that since Hanover did not establish by summary judgment evidence that it was prejudiced by the failure to tender the suits for a defense, it is not entitled to summary judgment. The general rule is stated in *Members Ins. Co. v. Branscum,* 803 S.W.2d 462, 466–67 (Tex.App.—Dallas 1991, no writ):

It is the service of citation upon the insured which imposes on the insured the duty to answer to prevent a default judgment. No duty is imposed on an insurer until its insured is served and sends the suit papers to the insurer. This action by the insured triggers the insurer's obligation to tender a defense and answer the suit.

Because Hanover was never given notice of the filing of the *Collie, Lane,* or *Bailey* lawsuits, the duty to defend appellants was never triggered. *See Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 174 (Tex.1995). Furthermore, as alleged by Hanover in its motion for summary judgment, under the provisions of the policy the insured will not, "except at [its] own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our [insurer's] consent." We conclude, based on the policy provision, that appellants cannot recover the costs of defending the *Collie, Lane,* and *Bailey* suits, since they failed to notify the insurers of the suits pursuant to the policy provisions, and since they voluntarily undertook such costs and payments. *See Nagel v. Kentucky Cent. Ins. Co.,* 894 S.W.2d 19 (Tex.App.—Austin 1994, writ denied). Consequently, Hanover had no duty to defend those suits and has no duty to pay the costs of E & L's expenses in defending the *Collie, Lane,* and *Bailey* suits. We affirm the trial court's action in granting Hanover summary judgment.

Thus, we sustain appellants' first point of error as to the granting of the summary judgment of St. Paul; we reverse and remand for trial. We overrule appellant's second point of error and affirm the summary judgment granted in favor of Hanover.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.