WESTCHESTER FIRE INSURANCE COMPANY, United States Fire Insurance Company, and Crum & Forster Insurance Company, Appellants,

v.

GULF COAST ROD, REEL & GUN CLUB, Jefferson Insurance Group, and Monticello Insurance Group, Appellees.

No. 01–00–01404–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 20, 2001.

Susan C. Stevenson, Hays McConn, Rice & Pickering, Houston, for Appellant.

Terry Fitzgerald, The Fitzgerald Law Firm, Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and PRICE.*

## OPINION

SAM NUCHIA, Justice.

Appellants, Westchester Fire Insurance Company, United States Fire Insurance Company, and Crum & Forster Insurance Company, appeal the judgment of the trial court ordering appellants to provide a defense to appellee Gulf Coast Rod, Reel and Gun Club ("the Club") for all claims made against the Club in a series of lawsuits asserting claims in connection with beach erosion and other property damage alleg-edly resulting from the Rollover Pass Fish Cut ("the Cut") on Bolivar Peninsula. We affirm.

## BACKGROUND

In 1996, John and Marie Gordon and other landowners on Bolivar Peninsula sued the Club and other defendants,[1] alleging that the defendants acted together in dredging the Cut beginning in 1954 ("the underlying lawsuit"). The plaintiffs alleged that the purpose of the Cut was to improve fishing for the Club and that the continuous dredging to maintain the Cut destabilized the coastal area, created accelerated erosion of the adjoining beaches, and spoiled the habitat for several types of birds and wild animals. They alleged that the Club purchased a tidal marsh at Rollover Pass; conveyed an easement in 1954 to the State of Texas for the purpose of dredging the Cut; and, in 1987, leased the entire property to Galveston County for maintenance as a park. The Plaintiffs further alleged that the defendants, through independent studies, had known for at least 20 years that the dredging was causing destabilization and massive erosion and that the defendants had intentionally interfered with the natural flood, current, tide, sand drift, vegetation, and wildlife of the area and that the plaintiffs had recently discovered that the erosion was caused by the acts of the defendants. They alleged that the Cut constituted a taking and con-

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. The underlying lawsuits are *John B. Gordon, et ux., Marie Gordon v. State of Texas, Galveston County, Gulf Coast Rod and Reel and Gun Club, General Land Office and Texas Parks and Wildlife Dept.; Roy Steinhagen et ux., Kim Steinhagen, et al. v. Gulf Coast Rod and Reel and Gun Club and Texas Parks and Wildlife Dept. v. Joe E. Polk, et al., Intervenors; James D. Hearn and wife, Sandra Hearn, Individually and as Representatives of a Class v. Gulf Coast*

*Rod and Reel and Gun Club, Wayne Stupka, David Desormeaux, Robert H. Kent, Floyd W. Morrison, Jr. and John Eberling, Jr.; and K.M. Shipley, T.E. Moor, III, Glenn Davie Moor, Boyd Arnold, et ux., Patsie Arnold, Marian Caffery Campbell, Billy Bryant, et ux., Ann Bryant, Martha Anderson, James D. McNicholas and Pete Anselmo, et ux., Dorothy Anselmo v. State of Texas, Galveston County, Gulf Coast Rod and Reel and Gun Club, Texas Parks and Wildlife Dept. and General Land Office.*

version, that the defendants were negligent and proximately caused the plaintiffs' damages, and that the acts were knowingly, intentionally, and willfully done and constituted gross negligence. The plaintiffs also alleged that the defendants created the Cut with full knowledge of its consequences and, alternatively, they learned of its consequences a few months thereafter, but concealed that knowledge.

In allegations directed specifically to the Club, the plaintiffs alleged acts of negligence, among other things, (1) in dredging, maintaining, and operating the Cut, (2) in failing to notify the plaintiffs that their property was subject to erosion, (3) in failing to ascertain the consequences of the dredging, (4) in not changing or altering the Cut after the erosion damage was known, (5) in creating a dangerous condition to the plaintiffs' lives and property, and (6) in causing unnatural erosion. The plaintiffs alleged that some of their land had been totally and permanently lost and that some land had been temporarily lost. They requested compensation for the difference between the value of their land before the creation of the Cut and the value of their land since the Cut was dredged. They also requested exemplary damages, a permanent injunction to fill the Cut, and attorney's fees.

At all times material to the lawsuit, the Club maintained comprehensive general liability ("CGL") insurance coverage with various insurance carriers, including appellant Westchester Fire from December 16, 1979 to December 16, 1983 and appellant U.S. Fire from December 16, 1983 to December 16, 1984. Westchester Fire and U.S. Fire are part of the Crum & Forster Group. Each of these policies contained substantially the same following provisions:

## DEFINITIONS

. . . .

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

. . . .

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

. . . .

I. COVERAGE A—BODILY INJURY LIABILITY
COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or
B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent. . . .

After the lawsuits were filed, the Club filed a claim with its insurance carriers, and appellees Jefferson Insurance Group and Monticello Insurance Group agreed to provide a defense. However, appellants

denied the Club's request for a defense. The Club, Jefferson, and Monticello sued appellants, requesting, among other things, that the trial court render a judgment declaring that appellants owe an obligation, in the underlying lawsuits, to the Club under its policies. Appellants filed a motion for summary judgment, contending that they had no duty to the Club because the allegations in the underlying lawsuits were of intentional and knowing conduct, there was no "occurrence" within the meaning of the policies, and coverage was precluded under the "loss in progress" doctrine because the plaintiffs alleged that the Club had known about the erosion for at least 20 years, or at least three years before purchasing any policy from appellants.

The Club filed a motion for summary judgment in response to appellants' motion. The Club contended that the allegations of negligence in the underlying lawsuits were sufficient to trigger appellants' duty to defend, that the Club's damages were caused by an "occurrence" as defined in the policy, and that the "loss in progress" doctrine did not apply because the Club did not know of any liability at the time it purchased the policy and, in addition, the doctrine addresses indemnity, not the duty to defend, and is a question of fact to be determined at the trial. The trial court granted the Club's motion, denied appellants' motion, and ordered appellants to provide the Club with a defense in the underlying lawsuits.

## DISCUSSION

### Standard of Review

We follow the usual standard of review for rule 166a(c) summary judgments. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four Corp.*, 888 S.W.2d 31, 33–34 (Tex.App.—Houston

[1st Dist.] 1994, writ denied). When both parties move for summary judgment, each party must carry its own burden as the movant, and we must indulge all reasonable inferences and resolve all doubts in favor of the non-movant. *Holstein v. Fed. Debt Mgmt., Inc.*, 902 S.W.2d 31, 33–34 (Tex.App.—Houston [1st Dist.] 1995, no writ). Before a court of appeals may reverse a summary judgment for one party and render judgment for the other, both parties must ordinarily have sought final judgment relief in their motions for summary judgment. *CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex.1998). When the relief sought is a declaratory judgment, an appellate court may properly render judgment on liability alone. *Id.*

### 1. Did the plaintiffs in the underlying lawsuit allege an occurrence?

In their first issue, appellants contend that the plaintiffs in the underlying lawsuit did not allege an "occurrence" within the meaning of the liability insurance policies. Appellants argue, without citing authority, that the mere presence of a negligence allegation is insufficient to trigger an insurer's duty to defend when it is apparent from a complete reading of the pleadings that the alleged acts of negligence are related to and interdependent with intentional tortious activities. Appellants also argue that, because the Club has referred to its conveyance of an easement to the State of Texas as "the only material underlying fact," there has been no "occurrence." Appellants assert that the conveyance of an easement does not fall within a CGL policy's definition of an "occurrence" and any alleged negligence in connection with the conveyance of the easement would constitute a contractual claim.

An insurer's duty to defend is triggered when the allegations in the plain-

tiff's pleadings raise a potential for coverage under the policy. *Argonaut S.W. Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex. 1973). The insurer bears the burden of proving that the allegations contained in the underlying plaintiff's petition are excluded from coverage, and any doubt is resolved in favor of the insured. *Adamo v. State Farm Lloyds Co.,* 853 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1993, writ denied). The allegations are to be given a liberal interpretation. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). Any doubts regarding whether the allegations trigger a defense by the insurer are resolved in favor of the insured. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965).

Appellants cite *Argonaut Southwest Insurance Co. v. Maupin* as an example of a similar case in which an intentional action did not trigger insurance coverage. In *Maupin,* a contractor removed dirt from a property under an agreement with a person believed to be the property owner. 500 S.W.2d at 634. The true owner sued the contractor for trespass, and the contractor requested a defense and indemnity under his insurance policy. *Id.* The court rejected his argument that the removal of the dirt was an "accident," saying the contractor did what he intended to do and the acts were voluntary and intentional, even though the resulting damage to the true owner was unexpected, unforeseen, and unintended. *Id.* at 635.

*Maupin* is distinguishable from the present case. In *Maupin,* the alleged "accident" or "occurrence" was the removal of dirt from the property, and the damage complained of was the removal of the dirt. The dirt removal was an intentional act. Here, the "occurrence" was not the conveyance of the easement, nor was it the dredging of the Cut, both intentional acts. The "occurrence" was the repeated exposure to water currents that were altered by the dredging and that resulted in the erosion of sand on the underlying plaintiffs' property. The sand erosion—the property damage—was neither expected nor intended from the standpoint of the Club. There is nothing in the underlying plaintiffs' petition to indicate that the Club intended to erode the sand from the plaintiffs' property.

■ We conclude that the underlying plaintiffs' petition alleges an "occurrence" within the meaning of the Club's liability insurance policies. Accordingly, we overrule appellants' first issue.

**2. Is coverage barred by the "loss in progress" or "known loss" doctrines?**

■ In their second issue, appellants contend that coverage for the Club's claims is barred by the "loss in progress" or "known loss" doctrines.[2] Under the "loss in progress" or the "known loss" doctrines, an insured cannot insure against something that has already begun and that is known to have begun. *Two Pesos, Inc. v. Gulf Ins. Co.,* 901 S.W.2d 495, 501 (Tex. App.—Houston [14th Dist.] 1995, no writ).

Appellants contend that, because of the allegation in the underlying petition that the defendants, through independent stud-

**2.** A "loss in progress" is is an ongoing progressive loss that the insured is or should be aware of at the time the policy is purchased. *Two Pesos, Inc. v. Gulf Ins. Co.,* 901 S.W.2d 495, 501 (Tex.App.—Houston [14th Dist.] 1995, no writ). A "known loss" is a loss that has already occurred and that is known or should be known by the insured when the policy is purchased. *Burch v. Commonwealth Mut. Ins. Co.,* 450 S.W.2d 838, 840–41 (Tex. 1970).

ies, had known about the erosion for at least 20 years, or since at least 1976, the Club is precluded from coverage under its policies, which were first issued in 1978. In support of their contention, appellants cite *E & L Chipping Co. v. Hanover Insurance Co.*, 962 S.W.2d 272 (Tex.App.—Beaumont 1998, no pet.), and *Franklin v. Fugro–McClelland (Southwest), Inc.*, 16 F.Supp.2d 732 (S.D.Tex.1997).

In *E & L Chipping*, a fire in a wood chip pile was extinguished with water in 1988, and the water contaminated a lake and underground water. 962 S.W.2d at 275. E & L Chipping bought a CGL policy in 1989. *Id.* E & L Chipping was sued because of the pollution, and its carrier refused to defend the suit. *Id.* at 274. E & L Chipping sued the carrier, and the trial court granted the carrier's motions for summary judgment. *Id.* The court of appeals reversed based on the fact that, on the face of the pleadings, at least some of the property damage occurred during the policy period.[3] *Id.* at 275. *E & L Chipping* does not support appellants' contention.

*Franklin v. Fugro–McClelland* is a patent infringement case in which the initial acts occurred in 1991 and 1992. 16 F.Supp.2d at 733. An excess CGL insurance policy with an advertising-injury rider was purchased in 1993. *Id.* The underlying plaintiff filed suit after the policy was purchased, and the insurer denied a defense. *Id.* The trial court held that the "known loss" doctrine precluded coverage because the initial acts leading to the plaintiff's lawsuit occurred in 1991 and the defendant knew of the injury to the plaintiff. *Id.* at 735–36. The court stated, "The relevant inquiry is whether they knew at the time they entered the insur-

ance policy that they were engaging in activities for which they could possibly be found liable." *Id.* at 737.

In the present case, the allegations in the underlying petition are not consistent. On the one hand, the plaintiffs allege that all the defendants "have known for at least twenty years that they were causing this destabilization and massive erosion." On the other hand, the plaintiffs allege that the Club was negligent "in failing to ascertain the consequences of the action of dredging 'The Cut.'" In light of these conflicting allegations, and giving the pleadings a liberal interpretation, we must resolve any doubts regarding coverage in the favor of the insured. *Nat'l Union Fire Ins.*, 939 S.W.2d at 141; *Heyden Newport Chem. Corp.* 387 S.W.2d at 26. Thus, we cannot say that coverage is precluded by the "loss in progress" or "known loss" doctrine.

We overrule appellants' second issue.

We affirm the judgment.

---

**3.** A second carrier's summary judgment was affirmed based on a pollution exclusion in its  policy.