## HOCHHEIM PRAIRIE CASUALTY INSURANCE COMPANY, Appellant,

v.

## Charles APPLEBY, as Executor of the Estate of Stephen D. Seffel, Deceased, Appellee.

No. 04–07–00028–CV.

Court of Appeals of Texas, San Antonio.

Jan. 16, 2008.

Opinion Dissenting to Denial of En Banc Reconsideration May 7, 2008.

Wm. David Farmer, Curney, Garcia, Farmer, Pickering & House, P.C., San Antonio, TX, for appellant.

Thomas W. Gendry, Gendry & Sprague, P.C., Jerry A. Gibson, Laura A. Cavaretta, Plunkett & Gibson, Inc., San Antonio, TX, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This appeal presents the issue of whether allegations that an insured, who is suffering from Alzheimer's and dementia and has had a temporary guardian appointed, "knocked down" another patient at an assisted care facility triggered the insurer's duty to defend. We conclude the allegations contained in the petition filed in the underlying survivorship action present the potential for coverage within the policy; therefore, we affirm.

## BACKGROUND

In 2005, Stephen Seffel was diagnosed with dementia and Alzheimer's disease.

Charles Appleby was appointed temporary guardian of Seffel's person and his estate, and shortly thereafter, Seffel was placed in an assisted care facility. While in the facility, Seffel twice "knocked down" another resident, Margaret Ann Sundby, over a period of three days. Sundby died from her injuries about two weeks after the second incident. Sundby's family sued Seffel[2] and Appleby, both individually and as Seffel's guardian.

Seffel was an insured under a Farm Liability Policy issued by appellant, Hochheim Prairie Casualty Insurance Company. When Hochheim refused to provide coverage, Seffel's estate filed a third party petition seeking a declaration on coverage and indemnity issues. The declaratory judgment action was severed from the Sundby suit, and Hochheim and Seffel's estate each moved for summary judgment. The trial court granted the estate's motion, denied Hochheim's motion, and ordered Hochheim to pay defense costs incurred by the estate[3] in the Sundby litigation. This appeal by Hochheim ensued.

## EXTRINSIC EVIDENCE

[1] We first decide whether the trial court properly considered extrinsic evidence in determining Hochheim's duty to defend. In his motion for summary judgment, Appleby argued that Seffel's actions may have been the result of "a disease process and not controllable by" Seffel because he suffered from dementia. In support of his motion, Appleby attached the affidavit of a neurologist who opined that Seffel was not responsible for his actions

---

2. During the pendency of the lawsuit, Seffel died and Appleby was appointed Independent Executor of Seffel's estate.

3. Hochheim does not insure Appleby individually; therefore, the duty to defend as to him individually is not the subject of this appeal.

when he struck Sundby because such aggressive behavioral outbursts are not uncommon in patients with dementia. The trial court overruled Hochheim's objection to the affidavit. On appeal, Hochheim asserts the trial court erred in considering extrinsic evidence of Seffel's mental state in determining whether it had a duty to defend. We agree.

Under the eight-corners rule, an insurer's duty to defend is determined solely by comparing the allegations within the four corners of the petition with the language contained within the four corners of the policy. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002). The allegations in the petition are considered without reference to their truth or falsity. *Id.* at 191. If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *Id.* When applying the eight-corners rule, resort to evidence outside the policy and the pleadings is generally prohibited. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 307 (Tex.2006). The eight-corners rule takes its name from the fact that only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the third-party claimant. *GuideOne*, 197 S.W.3d at 308. "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage." *Id.*

The Texas Supreme Court has not recognized an exception to the eight-corners rule. In *GuideOne*, the Court noted that some appellate courts have recognized such an exception, but those courts "have drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." *Id.* at 308–09. Although not adopting this narrow exception, the *GuideOne* Court expressly rejected "the use of overlapping evidence as an exception to the eight-corners rule because it poses a significant risk of undermining the insured's ability to defend itself in the underlying litigation." *Id.* Here, in the underlying Sundby lawsuit, Appleby pled Seffel's diminished capacity as a defense to liability. Seffel's diminished capacity was also the basis upon which Appleby sought coverage in the third-party action against Hochheim. As in *GuideOne*, the evidence here went to the issue of both coverage and the merits of the underlying lawsuit, and therefore, should not have been considered by the trial court.

## DUTY TO DEFEND

We next decide, looking only to the policy and the allegations in the petition, whether Hochheim's duty to defend was triggered. At issue in this appeal is whether Sundby's "bodily injury" was caused by an "occurrence" within the scope of the insurance policy. The policy defines "occurrence" as "an accident. . . ." Hochheim asserts its duty to defend was not triggered because Seffel's assault on Sundby was not an "accident." Appleby counters that Seffel could not have intentionally assaulted Sundby because he lacked the mental capacity to form the intent to harm her.

An insurer's duty to defend is triggered when the allegations in the plaintiff's pleadings raise a potential for coverage under the policy. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965). The insurer bears the burden of proving the allegations contained in the underlying plaintiff's petition are excluded from coverage. *West-*

chester Fire Ins. Co. v. Gulf Coast Rod, Reel & Gun Club, 64 S.W.3d 609, 613 (Tex.App.-Houston [1st Dist.] 2001, no pet.). If the pleadings do not state facts sufficient to bring the case clearly within or without the coverage, the general rule is that the insurer is obligated to defend if potentially there is a case under the pleadings within the coverage of the policy. Heyden Newport Chem. Corp., 387 S.W.2d at 26.

On appeal, we believe Hochheim focuses too narrowly on the allegation contained in the petition filed in the survivorship action that Seffel "assaulted" Sundby. Our focus must be on the factual allegations that show the origin of the damages and not on the legal theory alleged. National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). Also, allegations are given a liberal interpretation, and any doubts regarding whether the allegations trigger a defense are resolved in favor of the insured. Heyden Newport Chem. Corp., 387 S.W.2d at 26; Westchester Fire Ins. Co., 64 S.W.3d at 613. Here, the petition contains the following allegations: (1) Seffel was diagnosed with dementia and Alzheimer's and began to engage in impulsive and aggressive behavior; (2) Seffel became unable to care for his person or financial affairs and became a danger to himself and others; (3) a temporary guardian of Seffel's person and estate was appointed by a probate court; and (4) Seffel twice, over a period of three days, "knocked [Sundby] down." Giving these allegations their most liberal interpretation, we conclude the petition alleges facts potentially within the scope of coverage because they raise the question of whether Seffel unintentionally knocked Sundby down, causing her injury.

## CONCLUSION

We conclude Hochheim did not bear its burden of proving that the allegations contained in the underlying petition are excluded from coverage; therefore, we affirm the trial court's summary judgment in favor of Appleby.

REBECCA SIMMONS, Justice, dissenting.

Dissenting Opinion by REBECCA SIMMONS, Justice.

The estate of Margaret Ann Sundby sued Stephen Seffel, a fellow resident at a nursing home diagnosed with dementia and Alzheimer's disease, for an assault resulting in Sundby's death. Sundby's family also sued Charles Appleby, both individually and as Seffel's guardian. The issue on appeal is whether the allegations in the petition against Seffel triggered a duty to defend on the part of Hochheim Prairie Casualty Insurance Company ("Hochheim"). Because I disagree with the majority's conclusion that Hochheim has a duty to defend, I respectfully dissent to the denial of Hochheim's motion for en banc reconsideration.

The standards for determining whether an insurer has a duty to defend are well-settled and set forth in the majority's opinion. Here, Seffel's policy provides coverage for "bodily injury" caused by an "occurrence," which is defined in the policy as an "accident." Because the policy does not further define "accident," the term must be given its generally accepted or commonly understood meaning. Lamar Homes, Inc. v. Mid–Continent Cas. Co., 242 S.W.3d 1, 8 (Tex.2007).

An "accident" is commonly understood to be "an unintentional and unfortunate happening" or "something that happens unexpectedly." WEBSTER'S DICTIONARY 5 (4th ed.); see also Lamar Homes, 242

S.W.3d at 8 ("An accident is generally understood to be a fortuitous, unexpected, and unintended event."). As the Texas Supreme Court recently stated, "a claim does not involve an accident or occurrence when ... circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not." *Id.* at 9; *see also Mid–Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 155 (Tex.1999) (holding that injury is "accidental" when it is "not the natural and probable consequence of the action or occurrence which produced the injury ... or would not ordinarily follow from the action or occurrence which caused the injury") (internal quotation omitted); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827–28 (Tex.1997).

Sundby's petition alleges Seffel assaulted her. The petition describes a pattern of "impulsive and aggressive behavior" by Seffel (including discharging a firearm at another person) that harmed or threatened to harm others. After he was placed in an assisted living facility, Sundby's petition alleges, Seffel continued this pattern by "physically assault[ing] other residents and caregivers." Finally, the petition alleges that Seffel "knocked [Sundby] down" causing head contusions, and that three days later he "again knocked Mrs. Sundby to the ground, this time causing her to suffer an intracerebral hemorrhage," resulting in her death some two weeks later.

"Assault" is, by definition, intentional or volitional—there is no such thing as a "negligent assault." *See Medrano v. City of Pearsall*, 989 S.W.2d 141, 144 n. 2 (Tex. App.-San Antonio 1999, no pet.). And the natural and probable consequence of "knocking someone down" is that the person "knocked down" may be injured, perhaps even fatally. Accordingly, Sundby's allegations that Seffel "negligently assault-

ed" her do not allege an "accident" for purposes of Hochheim's duty to defend. We must look elsewhere for facts describing an accident.

In assessing whether the "four corners" of Sundby's live pleading potentially describe an "accident," the majority focuses on the following allegations:

(1) Seffel was diagnosed with dementia and Alzheimer's and began to engage in impulsive and aggressive behavior; (2) Seffel became unable to care for his person or financial affairs and became a danger to himself and others; (3) a temporary guardian of Seffel's person and estate was appointed by the probate court; and (4) Seffel twice, over a period of three days, "knocked [Sundby] down."

These allegations, the majority concludes, trigger the duty to defend because they arguably raise the "question of whether Seffel *unintentionally* knocked Sundby down, causing her injury." (emphasis added). Yet none of the Sundby's pleadings describe Steffel's actions as accidental. Implicit in the majority's conclusion is a determination that allegations of the insured's diminished capacity necessarily entail the contention that the insured was incapable of "intending" his acts and that incapacity alone can convert an otherwise intentional act into an "accident" as that term is used in a liability policy. Based on the pleadings *in this case,* I disagree.

Texas courts have rejected claims that a defendant's lack of capacity is dispositive of issues regarding the defendant's ability to "intend" his actions. Although not a duty to defend case, in *Bailey v.C.S.*, 12 S.W.3d 159 (Tex.App.-Dallas 2000, no pet.), the court of appeals held that a child's minority status does not mean the child lacked the capacity to form the requisite intent to commit an intentional tort. In *Bailey,* the plaintiff sued for battery after being injured while babysitting a four-

year-old child who unexpectedly struck her in the throat. *Id.* at 161. The appellate court reversed the trial court's grant of summary judgment holding that the child's minority standing alone was insufficient to establish, as a matter of law, that he lacked the requisite intent to commit a battery. *Id.* at 162.

Similarly, in *Wessinger v. Fire Ins. Exch.,* 949 S.W.2d 834 (Tex.App.-Dallas 1997, no writ), after consuming too much alcohol, Wessinger inexplicably and repeatedly struck the plaintiff in the face several times. Wessinger claimed that his conduct was "accidental" because he did not remember striking the plaintiff and never intended to injure him. *Id.* at 835–36. The court rejected Wessinger's argument, noting that there was no evidence that Wessinger slipped, fell or reached out causing his fist to mistakenly come into contact with the victim's face. *Id.* at 838. Wessinger's impaired capacity to form an intent had no bearing on the issue of whether he "intended" to strike the plaintiff, and because the plaintiff's injuries naturally resulted from that conduct, the act was not "accidental" for purposes of insurance coverage. *Id.; see also Metro. Prop. & Cas. Co. v. Murphy,* 896 F.Supp. 645, 648 (E.D.Tex.1995) (holding that while an insured's addictions may explain *why* he drilled holes in bedroom and bathroom walls to observe a female houseguest, these diseases or addictions do "not change the fact that [the houseguest's] causes of action are based upon [the insured's] voluntary and intentional conduct" of invading her privacy by looking at her through holes in the walls).

Here, like in *Wessinger,* the petition lacks any allegations that Seffel knocked Sundby down because, for example, he slipped, was pushed by another, was in the throws of impulsive behavior or even that he could not help himself because of his dementia. Seffel's diminished mental capacity might explain *why* he twice knocked Sundby down, and it might mean that he should not be held culpable for those assaults, but, without more, it does not mean that those assaults were "arguably accidental." Just as the child's age in *Bailey* and the insured's intoxication in *Wessinger* did not make their conduct "unintentional," Seffel's dementia or Alzheimer's alone does not mean Seffel lacked intent to "knock [Sundby] down." Nothing else in the four corners of the Sundby's pleading suggests that Seffel's conduct was accidental.

There may be public policy reasons for holding that an assertion of involuntary diminished capacity converts an intentional act into an accident for purposes of an insurer's duty to defend, but such policy should be identified and addressed. Under even the most liberal reading of Sundby's petition, the allegations state that Seffel intended the act of assaulting Sundby and the damages alleged are the natural consequences of that act. Under Texas law, that means Seffel's conduct was not an "accident" under the policy, and the trial court erred in rendering summary judgment that Hochheim had a duty to defend. I would, therefore, grant the Motion for En Banc Reconsideration, sustain Hochheim's issues on appeal and reverse the trial court's summary judgment.