

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00085-CV

_____

TEJAS SPECIALTY GROUP, INC. AND TEJAS SPECIALTY CONCRETE
COATINGS, LLC, Appellants

V.

UNITED SPECIALTY INSURANCE COMPANY, Appellee

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-313064-19

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

This is a general liability insurance coverage dispute involving the duty to defend and duty to pay arising from an underlying construction defect case. Appellants Tejas Specialty Group, Inc. and Tejas Specialty Concrete Coatings, LLC (collectively "Tejas") sued their liability insurer, United Specialty Insurance Company ("United"), asserting claims for declaratory relief and breach of contract for United's refusal to defend and indemnify Tejas in the underlying case as well as claims for violations of the Texas Insurance Code and for attorney's fees. Tejas filed a motion for partial summary judgment, seeking a ruling on United's duty to defend the underlying case. United filed a cross-motion for summary judgment, seeking dismissal of all of Tejas's claims. Following a hearing, the trial court granted United's motion and denied Tejas's motion. Tejas now seeks reversal of the trial court's summary judgment in favor of United and of the trial court's denial of Tejas's motion for partial summary judgment.

We hold that United had a duty to defend the third-party claim against Tejas in the underlying lawsuit, and it breached that duty. We therefore reverse the trial court's summary judgment in favor of United and the trial court's denial of Tejas's motion for partial summary judgment. We render judgment that United had a duty to defend Tejas in the third-party claim in the underlying lawsuit and that it breached that duty, and we remand this case for proceedings consistent with this opinion.

## I.      Factual Background

The third-party claim against Tejas originated in the First Amended Third Party Petition ("Third-Party Petition") of Icon Builders, LLC ("Icon") filed in the 55th District Court of Harris County. In that petition, Icon alleged that Avenue Community Development Corporation ("ACDC") and Avenue Station, LP ("Avenue") (collectively "Plaintiffs") had sued Icon, as general contractor, alleging breach of a construction contract, breach of express warranty, breach of performance bond, and negligence in the construction of Avenue Station, a multi-family affordable housing development in Houston, Texas (Project or Avenue Station Project), and that Icon was entitled to indemnity or contribution from Tejas if Icon was found liable to ACDC or Avenue for any work that Tejas had performed as a subcontractor on the Avenue Station Project. In addition to Tejas, Icon sued five other subcontractors raising similar claims of indemnity or contribution.

The six subcontracts were allegedly executed in 2014, 2015, and 2016, with Tejas's contract allegedly executed on December 21, 2015. Under the terms of the subcontract, Tejas agreed to provide labor and materials to "install lightweight and gypsum" on the Project and to "water-proof[] the balconies." No further terms or details of the general contract or the Tejas subcontract were stated. Icon alleged that the Avenue Station Project was "certified as substantially comp[l]ete on March 9, 2017." However, the Third-Party Petition did not allege when any of Tejas's work, or

any of the other subcontractor defendants' work, was performed, either before or after March 9, 2017.

According to Icon's Third-Party Petition, Plaintiffs alleged that in mid-2017, they

> began to receive reports of and or observe numerous concerning conditions at the Project. The non-conforming and/or defective work items manifested at the Project include the following: (1) improperly sealed and/or nonfunctioning weep gaps at window heads; (2) installation of a non-specified and otherwise unapproved weather-resistive barrier; (3) improper construction of vertical transition between the Project's stucco cladding and the lower-level brick wall; (4) exposed sheathing; (5) exposed weather-resistive barrier; (6) lack of proper integration of the weather-resistive barrier; (7) lack of properly installed door flashing and trim[;] (8) a failed and collapsed landscape masonry retaining wall[;] and (9) balcony flashing and drainage systems failures.
>
> 21. Further, with regard to the windows, Plaintiffs allege: (1) the presence of sealant within the drainage gap at the window heads has likely resulted in excessive moisture buildup within the Project's exterior cladding; and (2) the absence of a functional weep at the window heads has likely caused or contributed to the observed bulk water infiltration around the Project's windows as evidenced by the widespread distress visible around the interior finished at the windows.
>
> 22. Additionally, with regard to the Project's exterior cladding[,] Plaintiffs allege an absence of the necessary vertical gap at the vertical transition between the Project's stucco cladding and the lower level brick masonry wall which has caused or contributed to distress and damage along the length of that transition, including: (1) brick masonry delamination at the horizontal mortar joint below the row-lock; (2) reverse sloping of flashing above the brick masonry row-lock; and (3) reverse sloping of the flashing above the brick masonry row-lock.

Icon's Third-Party Petition alleges the following regarding indemnity or contribution against Tejas:

4

## 5. CONTRIBUTION AND INDEMNITY-[TEJAS]

38.    Plaintiffs allege [Icon's] breach of contract-construction contract, breach of express warranty, breach of contract-[]performance bond, and negligence on the construction project known as Avenue Station was the proximate cause of Plaintiffs' allegedly sustained injuries.

39.    In the unlikely event a judgment is rendered for Plaintiffs against [Icon] based upon a finding that damages were the result of work completed by Third-Party Defendant [Tejas], [Icon] is entitled to contribution and indemnity from [Tejas] under section 33.016 of the Texas Civil Practice and Remedies Code, to recover any payments [Icon] may be required to make to Plaintiffs as a result of [Tejas's] acts or omissions.

40.    [Icon] contends they are not liable to Plaintiffs for their alleged damages, if any. However, to the extent that Plaintiffs establish that the proximate cause of the damages arose from work that was contained in the scope of work for Third-Party Defendant [Tejas], [Icon] asserts causes of action against [Tejas] for negligence and breach of contract.

Finally, Icon's Third-Party Petition damage allegation states:

### DAMAGES

Plaintiffs' live Petition asserts [a] claim for damages allegedly caused by . . . Icon . . . . This Petition is not an endorsement of the existence, validity, recoverability, admissibility, credibility, or amount of those damages. However, to the extent the Court rules any of the alleged damages are valid, recoverable damages, and to the extent a jury awards Plaintiffs these damages, these damages were caused by the actions and omissions of the Third-Party Defendants. The damages sought by Plaintiffs are incorporated and alleged herein against the Third Party-Defendant.

Tejas tendered the defense of Icon's claim against it to its commercial general liability insurer, United. The inception date for United's policy was October 1, 2017. United denied coverage, claiming, among other things, that Icon's claim was excluded

5

under United's "Pre-Existing Injury or Damage Exclusion," sometimes known as the "*Montrose* Exclusion."[1]

Tejas sued United and Maxum Indemnity Company,[2] alleging breach of the duty to defend and indemnify from Icon's Third-Party Petition and seeking declaratory relief. Tejas also alleged violations of the Texas Insurance Code, Sections 541.010(a)(2)(A), (3), 542.051, and 542.060(A), seeking recovery of damages, attorney's fees, and statutory penalties.

---

[1]In *Montrose Chemical Corp. v. Admiral Ins. Co.*, 913 P.2d 878, 906 (Cal. 1995) (op. on reh'g), the California Supreme Court

> held that coverage is not precluded for damage that the policyholder knew existed at the time of the purchase (even after the policyholder had been sued) as long as the policyholder's liability for that property damage was still contingent. In response to that decision, the Insurance Services Organization, Inc. (ISO) adopted an endorsement in 1999, which bec[a]me part of the October 2001 CGL form. This provision, commonly referred to as the *Montrose* endorsement or exclusion, retains the fundamental requirement that "personal injury" or "property damage" occur during the policy's period. It adds the requirement that no policyholder knew that the "bodily injury" or "property damage" had occurred, in whole or in part, prior to the policy's inception. Additionally, if a policyholder knew, prior to the policy inception, that "bodily injury" or "property damage" had occurred, any continuation or resumption of such bodily injury or property damage will be considered to be known prior to the policy period. The provision establishes the end date for policies triggered under a continuous or injury-in-fact trigger.

Scott M. Seaman & Jason R. Schulze, *Allocation of Losses in Complex Insurance Coverage Claims* § 2:2 (9th ed. 2020–21) Westlaw ALCICC (database updated Dec. 2020).

[2]Maxum Indemnity Company is not a party to this appeal.

United answered with a general denial and several affirmative defense policy exclusions, including the "*Montrose* exclusion" or "Pre-existing Injury of Damage Exclusion." The relevant policy provisions are:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. . . .

      . . . .

   b. This insurance applies to . . . "property damage" only if:

      (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

      (2) The . . . "property damage" occurs during the policy period[.]

   . . . .

**SECTION V—DEFINITIONS**

   . . . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

   . . . .

7

**17.** "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it…

    . . . .

## PRE-EXISTING INJURY OR DAMAGE EXCLUSION

This endorsement modifies the Conditions provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

1.    Any ["]occurrence["], incident or "suit" whether known or unknown to any officer of the Named Insured:

    (a)    which first occurred prior to inception date of this policy (or the retroactive date of this policy, if any); or

    (b)    which is, or is alleged to be, in the process of occurring as of the inception date of the policy or the retroactive date of this policy, if any; even if the "occurrence" continues during this policy period.

2.    Any damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury", which are known to any officer of any insured, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy or the retroactive date of this policy, if any.

We shall have no duty to defend any Insured or Additional insured against any loss, "occurrence", incident or "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal injury" to which this endorsement applies.

All other terms, conditions and exclusions under this policy are applicable to this Endorsement and remain unchanged.

Tejas moved for partial summary judgment on its claims that United had a duty to defend the Icon third-party claim and breached that duty by refusing to defend. Tejas argued that the court could consider both the Third-Party Petition and the Plaintiffs' First Amended Petition in the underlying action in applying the eight-corners rule in determining the duty to defend. Tejas relied on United's letter declining coverage based on the *Montrose* exclusion and the holding from *AIX Specialty Insurance Co. v. Universal Casualty Co.* that "[a]lthough the burden is typically 'on the insured to show that a claim against him is potentially within the scope of coverage under the policies,' when 'the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply.'" No. H-12-507, 2014 WL 12599325, at *10 (S.D. Tex. July 30, 2014) (am. mem. and rec.) (quoting *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 725 (5th Cir. 1999)). Tejas argued that it did not need to first establish coverage of its claims under the insuring language of the policy and that the *Montrose* exclusion did not apply under the allegations of the Third-Party Petition and the Plaintiffs' First Amended Petition.

United responded by arguing that only the Third-Party Petition—Icon's petition—should be considered in the eight-corners analysis and that the allegations in that Petition fall within the scope of the *Montrose* exclusion. United did not contest Tejas's assertion that it did not first have a duty to show that the Third-Party Petition allegations involved matters within the coverage provisions of the policy, nor did United assert that Tejas had failed to do so.

While disagreeing on which petitions to include in the eight-corners rule analysis, the parties squarely drew the battle line on whether Tejas's claims are barred by the *Montrose* exclusion, as exemplified by the "Relief Requested" paragraph at the opening of United's Motion for Summary Judgment:

> There is no coverage under the U[nited] policy for [Tejas] for the underlying lawsuit because the policy contains a Pre-Existing Injury or Damage Exclusion ("*Montrose* exclusion") and the operative underlying case pleading alleges the damage occurred prior to policy inception. The underlying Third-Party Petition filed by Icon . . . alleges a manifestation of damage "beginning in mid-2017." The *Montrose* exclusion squarely excludes coverage for all damage beginning prior to the October 1, 2017 policy inception. Consequently, U[nited] requests summary judgment from this Court that: (1) U[nited] does not owe a duty to defend Tejas in the underlying lawsuit; and (2) U[nited] does not owe a duty to indemnify Tejas for any award or judgment rendered against Tejas in the underlying lawsuit.

In its Supplement to its Motion for Summary Judgment, United made clear that its Motion for Summary Judgment was directed at both the duty to defend and the duty to indemnify and that if the court should find those duties lacking, then the court should dismiss Tejas's statutory claims, as United would owe no duty as a matter of law in the absence of any contractual duties.

On February 28, 2020, the trial court signed its order granting United's Motion for Summary Judgment, dismissing all of Tejas's claims with prejudice and denying Tejas's Motion for Partial Summary Judgment.

## II.     Legal Standards

### a.     Standards of Review

In a summary-judgment case, the issue on appeal is whether the movant met the summary-judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We also consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005). We will affirm a summary judgment only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action (or defense, as the case

11

may be) as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary-judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. We should then render the judgment that the trial court should have rendered. S*ee Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848. This includes a situation where an insured has moved for declaratory relief on the duty to defend and the insurer has moved for summary judgment on the entire case. *Westchester Fire Ins. Co. v. Gulf Coast Rod, Reel & Gun Club*, 64 S.W.3d 609, 612 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

> As noted by the court in *Westchester Fire*,
>
> Before a court of appeals may reverse a summary judgment for one party and render judgment for the other, both parties must ordinarily have sought final judgment relief in their motions for summary judgment. *CU Lloyd's of Tex. v. Feldman*, 977 S.W.2d 568, 569 (Tex. 1998)[ (per curiam)]. When the relief sought is a declaratory judgment, an appellate court may properly render judgment on liability alone. *Id.*

64 S.W.3d at 612.[3]

---

[3]United contends that the trial court's denial of Tejas's partial motion for summary judgment, which sought summary judgment on the duty to defend and breach by United, is a non-appealable order because it was not a final judgment. Tejas's motion for partial summary judgment sought "an Order ruling that Maxum

### b. Insurer's Duty to Defend

Whether an insurance carrier owes a duty to defend under an insurance policy is a question of law, which we review de novo. *Transport Int'l Pool, Inc. v. Cont'l Ins.*, 166 S.W.3d 781, 784 (Tex. App.—Fort Worth 2005, no pet.); *State Farm Gen. Ins. Co. v. White*, 955 S.W.2d 474, 475 (Tex. App.—Austin 1997, no writ). Generally, in determining an insurer's duty to defend an insured against a third party's liability claim, we use the "eight-corners rule." *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494–95 (Tex. 2020).[4] The claims alleged in the four corners of the third party's petition are compared to the terms of coverage in the four corners of the insurance policy to determine if the insurer has a duty to defend. *Id.*; *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). The duty to defend is determined without regard to the truth or falsity of the third party's allegations, *Richards*, 597 S.W.3d at 495; *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*,

---

and United Specialty each had a duty to defend Tejas . . . , and they both breached that duty." Tejas's petition sought both breach of contract relief and declaratory relief on the duty to defend. United did not specially except to Tejas's motion for partial summary judgment regarding whether it was asserting a request for declaratory relief or relief for breach of contract. The motion could be read as asking for either form of relief. We do not find it material. We reject United's contention based on the rationale set forth in *Westchester Fire*, 64 S.W.3d at 612.

[4]We are not dealing with any potential exception to the eight-corners rule in this case. *See State Farm Lloyds v. Richards*, 966 F.3d 389, 396–97 (5th Cir. 2020) (holding no exception applies); *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 881–82 (Tex. 2020) (recognizing a collusive-fraud exception).

197 S.W.3d 305, 308 (Tex. 2006), and is based on the factual allegations in the underlying complaint, not the legal theories or legal causes of actions pleaded. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 495 (Tex. 2008).

In cases where the dispute concerns the claims made by the injured party against the insured, the "petition" used in the eight-corners analysis is the plaintiff's petition in the underlying case. *See Richards*, 597 S.W.3d at 500. In this case, where Tejas was brought into the underlying case by virtue of Icon's Third-Party Petition, Tejas and United disagree on which "petitions" the court may consider in applying the eight-corners rule. United contends that we can only consider the allegations in Icon's Third-Party Petition, which represent the actual allegations made against Tejas. On the other hand, Tejas contends that we should consider not only the Third-Party Petition but also the petitions of the Plaintiffs in the underlying litigation, which Tejas contends were incorporated by reference in the Third-Party Petition.

The parties did not direct our attention to any Texas Supreme Court or Fifth Circuit authority on this point, and lower Texas state courts and federal district courts split.[5] We need not decide this interesting question because it is uncontested that

---

[5]Agreeing with United are *Huffhines v. State Farm Lloyds*, 167 S.W.3d 493, 497 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding insurer's duty to defend is based on the allegations contained in the third-party petition and disagreeing with *E & R Rubalcava Constr., Inc. v. Burlington Ins. Co.*, 148 F. Supp. 2d 746, 750 n.4 (N.D. Tex. 2001) (mem. op. and order)); *Colony Ins. Co. v. Custom Ag Commodities, LLC*, 272 F. Supp. 3d 948, 959 (E.D. Tex. 2017) (holding under the eight-corners rule, the court is to consider only the third-party petition); *Liberty Surplus Ins. Corp. v. Allied*

14

Icon's Third-Party Petition should be part of our eight-corners analysis and, considering that Third-Party Petition with the United insurance policy in our eight-corners analysis, we conclude that United has a duty to defend Tejas in the Icon third-party action.

Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) (op. on reh'g). Each insurance policy must be interpreted according to its own specific provisions and coverages. *Gilbert Tex. Constr. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 129 n.7 (Tex. 2010). As summarized by the court in *Colony Insurance Co.*,

---

*Waste Sys.*, 758 F. Supp. 2d 414, 425 (S.D. Tex. 2010) (holding relevant pleading for the purpose of determining duty to defend is third-party petition); and *Gibson & Assocs., Inc. v. Home Ins. Co.*, 966 F. Supp. 468, 473 (N.D. Tex. 1997) (holding duty to defend is determined by reviewing only the third-party petition asserting claims against insured).

Supporting Tejas's position are *BITCO Gen. Ins. Corp. v. Acadia Ins. Co.*, 427 F. Supp. 3d 838, 852–55 (E.D. Tex. 2019) (holding court may look to the third-party petition and underlying plaintiff's petition); *E & R Rubalcava Constr.*, 148 F. Supp. 2d at 750 n.4 (considering allegations in the third-party petition and petition in the underlying lawsuit in assessing the insurer's duty to defend and disagreeing with *Gibson*, 966 F. Supp. at 473); and *Evanston Ins. Co. v. Kinsale Ins. Co.*, No. 7:17-CV-327, 2018 WL 4103031, at *11 (S.D. Tex. July 12, 2018) (holding "the [c]ourt may refer, if necessary, to the claims in the underlying suit in order to determine if the facts asserted trigger coverage") (citations omitted)).

In determining the scope of coverage, a court examines the policy as a whole to ascertain the true intent of the parties. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004)[(op. on reh'g)]. The court must also read all parts of the policy together in order to give meaning to every sentence, clause, and word to avoid rendering part of the policy inoperative. *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 372 (5th Cir. 2011); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). A policy's terms must be given their ordinary and generally accepted meaning unless the policy shows the words were meant in a technical or different sense. *Nat'l Union Fire Ins. Co. v. McMurray*, 342 F. App'x 956, 958 (5th Cir. 2009)[ (per curiam)]. When an insurance policy defines its terms, those definitions control. *Gastar Expl. Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Gilbert Tex. Constr.*, 327 S.W.3d at 126. If a policy can be given only one reasonable meaning, it is not ambiguous and will be enforced as written. *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 676 (Tex. App.—Austin 2003, no pet.); *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998)[ (per curiam)]; *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)[ (per curiam) (op. on reh'g)]. Only the terms of the contract should be consulted when interpreting an unambiguous contract provision. *See Brown v. Palatine Ins. Co.*, 89 Tex. 590, 35 S.W. 1060, 1061 (1896); *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010).

272 F. Supp. 3d at 956–57. The insured bears the initial burden to establish that the claim falls within the scope of coverage provided by the policy. *KLN Steel Prod. Co., Ltd. v. CNA Ins. Cos.*, 278 S.W.3d 429, 434 (Tex. App.—San Antonio 2008, pet. denied). Should the insured establish a right to coverage, the burden then shifts to the insurer to demonstrate that the claim is subject to a policy exclusion. *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App.—Fort Worth 2003, pet. denied) (op. on reh'g). The insurer has the burden of proving that the allegations in question establish the policy exclusion to coverage as a matter of law. *Gilbert Tex.*

*Constr.*, 327 S.W.3d at 124; *State Farm Lloyds v. Hanson*, 500 S.W.3d 84, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see Utica*, 141 S.W.3d at 204 (holding Utica had the burden to establish the professional services exclusion in its policy). If the insurer establishes that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within the terms of the policy. *Venture Encoding*, 107 S.W.3d at 733.

In applying the eight-corners rule, we liberally construe the allegations in the petition in favor of the insured. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005). All that is needed to invoke the duty to defend are factual allegations that support a claim potentially covered by the policy. *See GuideOne*, 197 S.W.3d at 310. The court may consider inferences logically flowing from the facts alleged in the petition. *Hallman*, 159 S.W.3d at 644–45; *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 456 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). If the petition "'does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the [pleading] within the coverage of the policy.'" *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). In other words, if there is doubt as to whether the claimant has pleaded a cause of action within coverage, the doubt is resolved in favor of the insured, and the insurer must defend. *Id.*; *see also GEICO Gen. Ins. Co. v. Austin Power*

*Inc.*, 357 S.W.3d 821, 824 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Further, "[i]f a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Zurich*, 268 S.W.3d at 491. Finally, when dealing with an exclusionary clause in an insurance policy, "'[t]he court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Utica Nat. Ins.*, 141 S.W.3d at 202 (quoting *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991)).

c.      **Insurer's Duty to Indemnify**

The duty to indemnify is a duty independent of the duty to defend under a liability insurance policy. *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 334 S.W.3d 217, 219 (Tex. 2011) (per curiam); *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743–44 (Tex. 2009); *Utica Nat'l Ins.*, 141 S.W.3d at 203. While the duty to defend typically arises during litigation, resulting in the applicability of the eight-corners rule for resolving duty-to-defend disputes, the duty to indemnify is generally determined based on facts actually established in the underlying litigation. *Burlington*, 334 S.W.3d at 219; *Zurich*, 268 S.W.3d at 490. There can be circumstances where the pleadings in the underlying action may negate both the duty to defend and the duty to indemnify. *Burlington*, 334 S.W.3d at 219, *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) (per curiam) (op. on

18

reh'g). Such circumstances involve allegations in the underlying lawsuit petition which render it impossible for the insured to show by extrinsic evidence that the loss falls under the terms of the policy. *Burlington*, 334 S.W.3d at 220; *Griffin*, 955 S.W.2d at 81–82.

## III.   Analysis

### a.      Duty to Defend

Since United's defense to Tejas's claim that it had a duty to defend was based on an exclusion to coverage under United's policy, the first question we must decide is whether the allegations against Tejas in the Third-Party Petition fall within the *Montrose* exclusion. Applying the rules of construction applicable to the eight-corners rule, we hold that they do not.

The essence of United's position is that the Third-Party Petition alleges that the work on the Project had been certified as substantially complete by March 9, 2017. By implication, this included Tejas's work. Further, the Third-Party Petition alleges that the Plaintiffs in the underlying case alleged that problems with the construction had been observed or made known to them, the owners, in the middle of 2017, which problems reflected property damage to the Project. According to United, because the inception date of its policy was October 1, 2017, the work and resulting property damage occurred before the policy was issued and continued into the policy period,

19

thereby excluding the claims under the *Montrose* exclusion.[6] While simplistically appealing, this position fails when tested against the rules of construction which apply to the eight-corners rule.

The Third-Party Petition is not just directed at the work of Tejas and property damages arising from it. The pleading names six subcontractors as third-party defendants; Tejas is one. The subcontractors' contracts all were allegedly signed in 2014, 2015, and 2016, and the Third-Party Petition was filed on April 30, 2019. Thus, we can infer that the work of all the subcontractors was performed and the property damage occurred between 2014 and April 30, 2019. However, the Third-Party Petition does not allege specifically when Tejas's work was performed during that period, nor does it expressly state when property damage specifically from Tejas's work occurred or manifested. Under these allegations, Tejas's work could have been performed, and property damage could have occurred, after October 1, 2017. Construing the allegations of the Third-Party Petition liberally in favor of the insured and resolving all doubts about coverage in favor of the insured, we hold that the property damage claim would not be excluded under the *Montrose* exclusion because the work and property damage arising therefrom could have occurred after the inception date of the

---

[6]The duty to defend analysis utilizes the "actual injury" rule, not the "manifestation" rule. Actual injury to property damage occurs when actual physical damage takes place rather than when the damage manifests itself or becomes discoverable. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24–26 (Tex. 2008).

policy. *See Vines-Herrin Custom Homes, LLC v. Great Am. Lloyds Ins. Co.*, 357 S.W.3d 166, 173 (Tex. App.—Dallas 2011, pet. denied); *Dallas Nat'l Ins. Co. v. Sabic Ams., Inc.*, 355 S.W.3d 111, 119 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

The fact that the Third-Party Petition alleges that manifestations of property damage began in mid-2017 does not negate this potentially non-excluded claim. United contends that manifestations of damage only occur after actual damage has occurred and that therefore actual damage had occurred before mid-2017. This, of course, begs the question of whether the property damage which had occurred before mid-2017 was related to Tejas's work because the Third-Party Petition does not expressly tie the alleged damage manifestations and damages to Tejas's work. While United argues that the damages described in the Third-Party Petition fall within the scope of Tejas's work, nothing on the face of the Third-Party Petition makes this connection. The mere fact that some manifestations of some damages occurred "beginning in mid-2017" does not mean that these manifestations were necessarily related to Tejas's work as opposed to any other subcontractor's work.

Likewise, the fact that the work on the Project had been certified as substantially complete on March 9, 2017, does not establish that Tejas's work did not occur after that date. The Third-Party Petition does not allege the terms of the contract between ACDC/Avenue and Icon, nor does it allege any terms of the Icon subcontract with Tejas other than a broad description of the work to be done. The Third-Party Petition contains no allegations regarding any contractual effect of a

21

certificate of substantial completion. Because the Third-Party Petition fails to allege an agreement that a third party (like an architect) was to be the arbiter to determine disputes about whether work had been completed according to the terms of the contract, the opinion of whoever prepared the alleged certificate of substantial completion is not conclusive. *See R.C. Small & Assocs., Inc. v. S. Mech., Inc.*, 730 S.W.2d 100, 104 (Tex. App.—Dallas 1987, no writ); *Longview Constr. and Dev., Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 777 (Tex. App.—Tyler 1975, writ dism'd by agr.); *Olson v. Burton*, 141 S.W. 549, 551 (Tex. App.—Fort Worth 1911, no writ). Because the certificate of substantial completion is not binding, the allegation of substantial completion merely creates conflicting factual inferences which will not negate coverage, as such a conflict is resolved in favor of the insured. *Westchester Fire*, 64 S.W.3d at 614 ("In light of these conflicting allegations, and giving the pleadings a liberal interpretation, we must resolve any doubts regarding coverage in the favor of the insured.").

Finally, United contends that because the Third-Party Petition alleges that property damages began to manifest "beginning in mid-2017," the language of the *Montrose* exclusion operates to exclude Tejas's claim, given that the exclusion (endorsement) precludes coverage for

> [a]ny ["]occurrence["], incident or "suit" whether known or unknown . . . which first occurred prior to inception date of this policy . . . ; or . . . which is, or is alleged to be, in the process of occurring as of the inception date of the policy . . . even if the "occurrence" continues during this policy period

22

and negates a duty to defend

> against any loss, "occurrence", incident or "suit," or other proceeding alleging damages arising out of or related to "bodily injury," "property damage" or "personal injury" to which this endorsement applies.

According to United, because "property damage" had begun to manifest in mid-2017, all property damage occurring before October 1, 2017, as well as all property damage continuing into the policy period, is excluded. United further argues that because such property damage occurred prior to the inception date of the policy and continuing into the policy period, it has no duty to defend any of Tejas's claims as they "arise out of or [are] related to" "property damage" to which this endorsement applies. United relies on *Mount Vernon Fire Insurance Co. v. Boyd*, No. H-11-3785, 2012 WL 1610745, at *4 (S.D. Tex. May 8, 2012), in support of this proposition. *Mount Vernon* is not analogous because it does not deal with general allegations of liability against multiple parties for generally described property damage.

However, United also relies on *Colony Insurance Co. v. Adsil, Inc.*, No. 4:16-CV-408, 2016 WL 4617449, at *1 (S.D. Tex. Sept. 2, 2016). *Colony* illustrates why United is painting with too broad of a brush in its arguments about the *Montrose* exclusion. Adsil manufactured an anti-corrosive product for air conditioning units. Calallen ISD (CISD) had over 200 air conditioning units installed over five years, involving multiple contractors. CISD sued Adsil, CJO Enterprises, Weathertrol, Inc., AirPro, Inc., and others in the underlying case because of problems with corrosion which developed in the air conditioners in question. In some instances, it appeared that Adsil contracted

23

with CJO to apply the product, and in other instances it appeared that CISD contracted directly with CJO to apply the product. Although CISD dismissed its claims against Adsil, Weathertrol and AirPro filed cross-claims against Adsil for contribution.

Colony insured Adsil and defended the underlying lawsuit under a reservation of rights. Colony filed suit in federal court, seeking, among other things, a declaration that it owed no duty to defend or indemnify Adsil in the underlying case, invoking an exclusion for claims "arising directly or indirectly out of the installation, service or repair of [Adsil's] product(s)[] performed by independent contractors or subcontractors of an insured . . . ." *Id.* at \*1. Colony claimed that this exclusion encompassed all claims asserted against Adsil, thereby relieving Colony of any duty to defend or indemnify Adsil. *Id.* Colony moved for summary judgment on its claims for declaratory relief of no duty to defend or indemnify Adsil based on this exclusion. *Id.*

In its opinion, the court noted the applicability of the eight-corners rule, the liberal construction rules in applying that rule, and the placement of the burden of proving an exclusion on the insurer. *Id.* at \*6. The court then reviewed the pleadings in the underlying case relating to Adsil's role in the sales and application of its product. The court found conflicting allegations regarding who hired the contractors, who applied the product, and whether Adsil was responsible for providing inadequate instructions on the use of its product to the installers. *Id.* at \*7. After noting the "arising directly or indirectly out of" language in the exclusion, and the broad

24

application given to such language by Texas courts requiring only "a causal connection between the excluded operation and the loss" (as is argued here by United), the court denied Colony's motion for summary judgment. *Id.* at *7–8 (citations and internal quotation marks omitted). In denying Colony's motion for summary judgment on the duty to defend, the court stated,

> Examining the pleadings in the underlying lawsuit, it is not clear that all of the claims against Adsil arise out of the installation of its product by a subcontractor. Although CISD alleges that Adsil "sub-contracted" with CJO to install Adsil's product, Weathertrol's pleading asserts that Weathertrol "contracted directly" with CJO to apply Adsil's product. AirPro's cross-claim states only that the coating applied to the air conditioning units was "manufactured by Adsil and applied by CJO." It is possible that both CISD and Weathertrol's allegations are true—the underlying lawsuit relates to the installation of more than 200 air conditioning units over the course of five years, involving multiple defendants and several contracts. Thus, conduct that is covered under Colony's policy exclusion and conduct that falls outside of the exclusion could have jointly contributed to CISD's loss . . . .
>
> . . . .
>
> In this case, Weathertrol's complaint against Adsil alleges conduct that could have caused CISD's injury independent of any conduct that would qualify under Colony's subcontractor exclusion. Weathertrol alleges that it contracted directly with CJO, not Adsil. If this is true, CJO was not a subcontractor for Adsil for this portion of the claims, and any injury that CISD sustained as a result of Weathertrol's contract with CJO falls outside of Colony's exclusion. This conduct would have caused the injury separately and independently of any contract work that would fall under Colony's exclusion. The Eight Comers Rule dictates that the allegations as set forth in the underlying complaint should be liberally construed without reference to their truth or falsity, and that any doubts about an exclusion should be resolved in favor of the insured. [*Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306,] 309 [(5th Cir. 2010) (per curiam)]; *Gore Design* [*Completions, Ltd. v. Hartford Fire Ins. Co.*,] 538 F.3d [365,] 370 (5th Cir. 2008)]. Furthermore, because this is a motion for

25

summary judgment, the Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

*Colony*, 2016 WL 4617449, at \*8.

So how does *Colony* guide us in this case? First, it reminds us that it is the insurer's burden to establish the applicability of the exclusion as a matter of law based on the allegations in the underlying pleadings, which are construed liberally in favor of the insured with all doubts regarding coverage being resolved in favor of the insured. *Id.* at \*6, \*8. Second, where multiple parties are alleged to have caused property damage over several years, there may be conduct by several parties which may have contributed to cause the property damage independently or concurrently. Where claims may involve both covered and excluded causes, the insurer has a duty to defend the entire case. *Id.* at \*8.

In this case, Icon sued six third-party defendants. It sought contribution or indemnity from each third-party defendant separately for damages for which it might be held liable which were caused by each separate third-party defendant. Icon pleaded the existence of property damage generally and that manifestations of property damage occurred beginning in mid-2017, but it did not affirmatively allege that property damage caused by Tejas, the damage being claimed by Icon, occurred or was in the process of occurring before October 1, 2017. Construing the pleadings liberally and resolving all doubts in favor of the insured as required, we hold that the Third-Party Petition does not allege facts which bring this case, in its entirety, within the

26

*Montrose* exclusion. As a result, United failed to meet its burden to sustain its summary judgment on the duty to defend. By the same token, the trial court should have granted Tejas's motion for partial summary judgment. *See Mid-Continent Cas. Co. v. Krolczyk*, 408 S.W.3d 896, 901, 906 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (op. on reh'g) (holding where insurer admitted allegations were covered but unsuccessfully asserted policy exclusion, insured was entitled to judgment that insurer owed a duty to defend); *Tucker v. Allstate Tex. Lloyds Ins. Co.*, 180 S.W.3d 880, 884, 889 (Tex. App.—Texarkana 2005, no pet.) (holding where insurer acknowledged that petition invoked coverage of policy and unsuccessfully relied on policy exclusion, insured was entitled to judgment on duty to defend).

### b. Duty to Indemnify/Insurance Code Violations/Attorney's Fees

United moved for summary judgment on the duty to indemnify based on its assertion that the allegations in the Third-Party Petition did not state factual allegations sufficient to invoke the duty to defend. "If the underlying petition does not state factual allegations sufficient to invoke the duty to defend, then even proof of all those allegations could not invoke the insurer's duty to indemnify." *Lair v. TIG Indem. Co.*, No. 02-11-00241-CV, 2011 WL 6415163, at *1 (Tex. App.—Fort Worth Dec. 22, 2011, no pet.) (mem. op.). Having held that the pleadings do make allegations sufficient to raise the duty to defend, we further hold that summary judgment for United on the duty to indemnify was improper. *See Burlington*, 334 S.W.3d at 220. Likewise, United moved for summary judgment on Tejas's claims for violations of the

27

Texas Insurance Code and for attorney's fees under Texas Civil Practice & Remedies Code Chapter 38 on the ground that it had no duty to defend and indemnify Tejas under the insurance policy. For the same reason, the trial court's order granting summary judgment on those claims was also improper.

## IV. Conclusion

We sustain Tejas's five issues that the trial court erred in granting summary judgment for United on the duty to defend, the duty to indemnify, and the extracontractual claims and that the trial court erred in denying Tejas's Partial Motion for Summary Judgment. We overrule United's Cross-Points that: 1) Tejas failed to meet its burden to prove a duty to defend under United's policy or an exception to the *Montrose* exclusion, 2) the trial court's order denying Tejas's Motion for Partial Summary Judgment is not appealable, and 3) Tejas is not entitled to partial summary judgment if the judgment for United is reversed. Cross-Point 4 is moot in light of the relief granted. *See* Tex. R. App. 47.1.

We reverse the trial court's judgment granting United's Motion for Summary Judgment and denying Tejas's Motion for Partial Summary Judgment as to United, and we render judgment in favor of Tejas that United had a duty to defend Icon's Third-Party Petition and that United breached that duty by failing to defend Tejas when requested. We remand this case to the trial court for further proceedings consistent with this opinion.

28

                                        /s/ Mike Wallach
                                        Mike Wallach
                                        Justice

Delivered: June 3, 2021